1    Robert H. Feinberg (Bar #015059)
2    Joshua R. Woodard (Bar #015592)
     Claudia E. Stedman (Bar #036387)
3    SNELL & WILMER L.L.P.
     One Arizona Center
4    400 E. Van Buren
     Phoenix, AZ  85004-2202
5    Telephone: (602) 382-6000
     Facsimile: (602) 382-6070
6    Email: rfeinberg@swlaw.com
            jwoodard@swlaw.com
7            cstedman@swlaw.com

8    *Attorneys for Defendant Liberty University, Inc.*

9

10                IN THE UNITED STATES DISTRICT COURT

11                   FOR THE DISTRICT OF ARIZONA

12

13   Misty Pagan                        No.

14            Plaintiff,
                                        (Maricopa County Superior Court Case
15       v.                              No. CV2022-052306)

16   Liberty University, Inc., a Virginia   **VERIFICATION IN SUPPORT OF**
     corporation,                           **NOTICE OF REMOVAL**

17            Defendant.

18

19

20        I, Claudia Stedman, pursuant to 28 U.S.C. § 1746 and LRCiv 3.6(b), hereby

21   declare as follows:

22        1.    I am over the age of eighteen and otherwise competent to make this

23   verification. This verification is based on my own personal knowledge.

24        2.    I am counsel to Defendant Liberty University, Inc. ("Liberty").

25        3.    True and accurate copies of Plaintiff Misty Pagan's (i) Summons and

26   Complaint and (ii) Certificate of Compulsory Arbitration filed in the underlying state court

27   case are attached as **Exhibits 1** and **2**, respectively, to Liberty's Notice of Removal filed

28

*(sidebar, left margin)* Snell & Wilmer L.L.P. | LAW OFFICES | One Arizona Center, 400 E. Van Buren, Suite 1900 | Phoenix, Arizona 85004-2202 | 602.382.6000

concurrently herewith. **Exhibits 1** and **2** to the Notice of Removal are true and complete copies of all pleadings and other documents filed in the state court proceeding.

4. A true and correct copy of the Notice of Filing Notice of Removal is attached as **Exhibit 3** to Defendants' Notice of Removal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 1st day of September, 2022.

SNELL & WILMER L.L.P.

By: */s/Claudia E. Stedman*

Robert H. Feinberg (Bar #015059)
Joshua R. Woodard (Bar #015592)
Claudia E. Stedman (Bar #036387)
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I do hereby certify that, on this 1st day of September, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and by email and/or U.S. First Class Mail if non-registrants:

Jeffrey Harris (Bar #031136)
**TITUS BRUECKNER & LEVINE PLC**
8355 E. Hartford Dr., Suite 200
Scottsdale, Arizona 85255
480-483-9600
jharris@tbl-law.com

*Attorney for Plaintiff Misty Pagan*

*/s/Natalie Ayala*

# EXHIBIT 1

*8/13/22 LBH @ 2:35 pm*

Clerk of the Superior Court
*** Electronically Filed ***
K. Sleeseman, Deputy
7/22/2022 5:39:35 PM
Filing ID 14599987

Person/Attorney Filing: Jeffrey Harris
Mailing Address: 8355 E Hartford Drive Suite 200
City, State, Zip Code: Scottsdale, AZ 85255
Phone Number: (480)483-9600
E-Mail Address: Jharris@tbl-law.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 031136, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

MISTY PAGAN
Plaintiff(s),
v.                                          Case No.  **CV2022-052306**
LIBERTY UNIVERSITY, INC. a Virginia
corporation                                 **SUMMONS**
Defendant(s).

To: LIBERTY UNIVERSITY, INC. a Virginia corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
   Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

*AZturboCourt.gov Form Set #7027720*

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *July 22, 2022*

*JEFF FINE*
Clerk of Superior Court

By: *KELLY SLEESEMAN*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZTurboCourt.gov Form Set #702720

2

Clerk of the Superior Court
*** Electronically Filed ***
K. Sleeseman, Deputy
7/22/2022 5:39:35 PM
Filing ID 14599984

Jeffrey D. Harris (Bar No. 031136)
**TITUS BRUECKNER & LEVINE PLC**
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona 85255
480-483-9600
jharris@tbl-law.com

*Attorneys for Plaintiff Misty Pagan*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MISTY PAGAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY UNIVERSITY, INC., a Virginia corporation; DOES I-X; ABC CORPORATIONS I-X; XYZ PARTNERSHIPS I-X; and DEF LLCs I-X,<br><br>Defendants. | No.  CV2022-052306<br><br>**COMPLAINT** |

Plaintiff, for her complaint against Defendants in this action, alleges as follows:

**I.**     <u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.     Plaintiff Misty Pagan, an individual ("Ms. Pagan"), is a resident of Maricopa County, Arizona.

2.     Defendant Liberty University, Inc. ("Liberty"), is a Virginia corporation.

3.     Defendants Does I-X, ABC Corporations I-X, XYZ Partnerships I-X, and DEF LLCs I-X are employees, agents, or independent contractors acting within the scope of their employment and/or agency who have been fictitiously named and who may have caused, contributed to, received benefits from, aided and abetted, or conspired with the other Defendants in the events alleged in this Complaint. Defendants Does I-X were at all times acting on behalf of and in furtherance of their respective marital communities.

4.      Defendants caused various acts alleged in this complaint to occur in Maricopa County, Arizona. Jurisdiction and venue in this state and county are proper.

5.      Plaintiff seeks relief for an amount of damages that qualifies this lawsuit for Tier 3 discovery per Rule 26.2(c)(3), Arizona Rules of Civil Procedure.

**II.      FACTUAL BASIS FOR PLAINTIFF'S CLAIMS**

6.      Ms. Pagan was an online post-doctoral student at Liberty (which is based in Lynchburg, Virginia), while residing in Maricopa County, Arizona.

7.      She is not a traditional student. She is a doctoral-prepared nurse practitioner and program director for graduate nursing programs at a reputable university in Glendale, Arizona. As such, she understands the requirements needed to complete a post-doctoral education program.

8.      "The program is responsible for ensuring adequate physical resources and clinical sites. Clinical sites are sufficient, appropriate, and available to achieve the program's mission, goals, and expected outcomes. The program needs to meet these expectations regardless of whether the student or the program finds the clinical site." This verbiage comes directly from the accrediting body, the Commission on Collegiate Nursing Education (CCNE) under Standard II-B (*see* **Exhibit A** at 3 for the revisions went into effect January 1, 2019).

9.      She was accepted into Liberty's psych-mental health nurse practitioner post-doctoral program in August 2020 with a set curriculum in which she was slated to graduate in August 2021.

10.     Prior to registering for the program, she looked on Liberty's website and noted that they advertised that they could not accept students in only one state: New York.

11.     When Ms. Pagan entered the Spring 2021 semester, on Wednesday, January 20, 2021, she received an email from Liberty University's Practicum Coordinator, Michelle Davis, stating that they are not allowing students to conduct practicum experiences in Arizona, and without further explanation.

12.     Ms. Pagan then made several attempts to contact the named Practicum

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

- 2 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1   Coordinator, Program Director, Folashade Odedina, and Admissions Director, John East.

2   When she did not hear anything further from those she contacted (several times) at Liberty

3   University, she escalated her concerns to the Dean of Nursing, Shanna Akers, on Friday,

4   January 22, 2021.

5           13.     Ms. Pagan requested a full refund as she was not only paying out of pocket

6   each month, but used financial aid as well.

7           14.     Liberty refused and stated that since Ms. Pagan entered the course at the

8   beginning of January 2021, she had no recourse.

9           15.     Even if she had been given a full refund, it would not have reimbursed her

10   for the amount of money spent on textbooks, software programs, and lab

11   work/fingerprinting.

12           16.     In addition, Ms. Pagan has spent countless hours throughout the program

13   writing papers, creating PowerPoints, taking the lead for *all* group projects in three

14   different courses throughout 2020, and studying for exams.

15           17.     Since then, Ms. Pagan communicated back and forth with the dean of

16   nursing, in which communications, Dean Akers had convinced Ms. Pagan to stay in the

17   practicum course (NURS 754) and that they would find a university approved preceptor for

18   her as they were allegedly working with the Arizona State Board of Nursing (AZBN) to

19   receive program approval.

20           18.     Ms. Pagan showed Dean Akers (via one of their Microsoft Teams meetings),

21   in January 2021, where Ms. Pagan found the above information (listed in #10) about the

22   program not accepting students in the state of New York (only) so that Liberty could

23   update their website (as applicable) to reflect other states where they could not accept

24   students (i.e., Arizona).

25           19.     Dean Akers thanked Ms. Pagan as she had "no idea" of this issue.

26           20.     The Arizona State Board of Nursing Approved Programs list is fluid, and is

27   not immediately updated, and so prior to applying to the program at Liberty University,

28   Ms. Pagan asked Liberty's admissions team whether Liberty could accept students in

Arizona, and attempted to reach out to the program director as well, but did not receive a response.

21.     Liberty had no reservations about accepting Ms. Pagan into their program.

22.     She began the program in August 2020 and as she progressed throughout the eight-week didactic courses, she grew concerned as to how many times the grades had changed (increased) after each remote proctored exam.

23.     In other words, upon information and belief, the grades were "padded" so that students were shown to be passing even if, by prior criteria, they were failing the course.

24.     Ms. Pagan joined a student support group (Liberty PMHNP Online) on Facebook, and it disheartened her to see how many students discussed the importance of the curves so that they would pass the exams.

25.     Ms. Pagan felt that the grade she had received was the one she had earned.

26.     She worked hard and studied even harder for each exam.

27.     It is understandable to remove an exam question from students' grades if it was poorly written, but, upon information and belief, there were instances, such as during the Clinical Psychopharmacology course (NURS 752), when at least four questions were removed on 25-question exams, which is excessive as it represents 16% of one's grade.

28.     As Ms. Pagan progressed, she had to locate her own preceptors.

29.     Based on the original requirements documented in Liberty University's PMHNP Practicum Guide (*see* **Exhibit B** at 5), she was able to precept under a licensed psychologist, a licensed counselor, a psych-mental health nurse practitioner, or a psychiatrist.

30.     As she was searching for preceptors, she was informed that at least 200 hours must be conducted with a psych-mental health nurse practitioner—and she had a very difficult time finding a reputable one.

31.     It takes time to contract with a preceptor/practicum site as the student is tasked with locating a preceptor/practicum site, completing the Liberty contracts and

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

- 4 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

requesting the supporting documentation from each preceptor/practicum site, sending all completed documents (*see* **Exhibit C**, Forms Nine and Ten; refer to Liberty University's DNP 2019 Handbook, at 152-155) to Liberty University's Practicum Coordinator,, and waiting to hear back from Liberty University to confirm if the preceptor/practicum site has been approved.

32.     In late December 2020/early January 2021, Ms. Pagan was able to find and initiated a contract with a reputable licensed psychologist.

33.     In early January 2021, she met with him, the CEO of the organization, and several other team members.

34.     They appeared excited to have her on-board as a student. The psych-mental health nurse practitioner that she had contracted with in October 2020 (in preparation for the January 2021 start date for the course NURS 754), abandoned her. After leaving several messages to request a start date for preceptorship, Ms. Pagan finally received a response from the preceptor via phone in which she stated that she was no longer available unless Ms. Pagan would be willing to see patients on her own at the provider's office and to text her if Ms. Pagan had any questions.

35.     Ms. Pagan told her that she would not do this because it is not ethical nor was she comfortable with this arrangement as she is not a psych-mental health provider, and that she would proceed in finding another provider to work with. As a result, Ms. Pagan informed the dean of nursing at Liberty University that she would need to find another preceptor due to these concerns and breach of contract.

36.     She later located another preceptor/practicum site in March 2021; however, the preceptor was not able to accommodate Ms. Pagan's hours until June 2021 (and it was later determined that the provider would only be available for half of these hours due to summer vacations, etc.).

37.     Ms. Pagan was encouraged by Dean Akers to take an "I" until she completed her hours over the summer months.

38.     Ms. Pagan was supposed to graduate in August 2021, and then her plan

- 5 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

moved to December 2021; now, it is inevitable that she will have to start all over again in a different program.

39.     During NURS 754 (in April 2021), Ms. Pagan was forced to wake up at 4:00 am to be on a live Standardized Patient Experience at 5:00 am because they "could not accommodate students on the West Coast." Otherwise, she would have received a failing grade for not participating.

40.     Meanwhile, other students were complaining that it was "too early" for them on the East Coast.

41.     Ironically, Ms. Pagan was the only one of very few students who knew the diagnosis (paranoid schizophrenia) of the patient despite not yet experiencing practicum experiences.

42.     Ms. Pagan asked herself and the adjunct faculty member who was teaching the didactic portion of the course (NURS 754) what have these students learned during this program and in their practicum experiences as many stated that the patient had a "mood disorder."

43.     Liberty's dean of nursing continued to assure Ms. Pagan, since January 2021 that they were working on getting approvals from the Arizona State Board of Nursing (AZBN).

44.     In June 2021, Ms. Pagan found a Decree of Censure posted on the Arizona Board of Nursing website which states that Liberty is listed under "Programs with Current Violations." *See* **Exhibit D**.

45.     Ms. Pagan sent this document to the same University administration team who has been on her email chains since January 2021 (including the dean of nursing).

46.     As a result of not completing this program, in addition to resources wasted (time, money, etc.), Ms. Pagan will not be able to implement her objectives of assisting to address the mental health needs of community patients throughout the state of Arizona, in which psych-mental health nurse practitioner providers are in demand.

47.     Ms. Pagan was patient and escalated her concerns to the dean of nursing

- 6 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1   (who she worked with since January 2021) in hopes of receiving some form of resolution.

2   In the end, all parties involved lacked transparent communication and/or were dishonest.

3       48.   Liberty claims to be a faith-based university, which makes this experience

4   beyond disappointing—it is egregious.

5       49.   Ms. Pagan spent much time preparing for remote-proctored examinations and

6   compiling very extensive assignments.

7       50.   She patiently made every effort to work with different individuals throughout

8   the program, including the dean.

9       51.   The program director and admissions director both ignored her concerns.

10      52.   Ms. Pagan would meet with the dean of nursing from the end of January

11  2021 to June 2021 (she initiated contact when she received an email from the practicum

12  coordinator stating that students in Arizona could not conduct practicum experiences);

13  otherwise, she would not have heard anything from the university.

14      53.   The only one who provided any form of open communication with Ms.

15  Pagan (after she informed her of the concerns) was an adjunct faculty member, she was

16  ignored or passed around by everyone else.

17      54.   The dean of nursing has since June/July 2021 referred an Ombudsman to deal

18  with Ms. Pagan's concerns and did not reveal the entire picture to him.

19      55.   With this certification, Ms. Pagan could have made between $75-100/hr, and

20  she was scheduled to graduate from this program in August 2021.

21      56.   Ms. Pagan had this timeline in place because she is also a program director

22  for graduate nursing programs and she did not know what bandwidth she would have after

23  August 2021.

24      57.   She could have completed this program at a different university and would

25  have had the same timeline to graduate in August 2021.

26      58.   Ms. Pagan's current grade for NU 754 is an "I" for "incomplete."

27      59.   She should not have this grade, and this should be expunged from her record

28  as she did most of the work for the course (except for the practicum hours) and technically

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1    had an "A" (709.92 out of 710 possible).

2        60.    Ms. Pagan had preceptors in place and contracts signed prior to the start of

3    this course based on the university handbook.

4        61.    However, as previously mentioned, she learned at the end of January 2021

5    that Liberty could not accept students in Arizona for practicum experiences.

6        62.    Then Liberty stated that she could not use the one preceptor as originally

7    outlined in their PMHNP Practicum Guide (pg. 5).

8        63.    Liberty also refused to issue Ms. Pagan a full refund, which led to this

9    situation.

10       64.    Liberty University explicitly shared that administration was aware in late

11   October/early November 2020 that they could not accept students from Arizona, but that

12   did not stop them from allowing Ms. Pagan to apply to practicum courses and paymoney

13   (to include financial aid) in December 2020 for the Spring 2021 semester.

14       65.    Ms. Pagan has received notifications from students in a Liberty Facebook

15   group, and has been saddened to see that those students who were able to complete the

16   program spent a significant amount of time waiting for their authorization to test (ATT) for

17   the certification which they studied so hard to achieve. Programs generally want their

18   students to test soon after graduation to support successful pass rates

19       66.    Either way, Ms. Pagan would have been out of money.

20       67.    For a time, Ms. Pagan continued to receive voicemails on her home phone

21   from Liberty to check in and ask her to sign up for the next semester. Many times, they

22   were automated calls.

23       68.    As of May 2022, Ms. Pagan continues to receive automated email

24   communication to sign up for the next (Summer 2022) semester.

25       69.    Ms. Pagan made an official complaint to Liberty in the summer of 2021.

26       70.    In response to her complaint, Liberty sent her a letter with false information.

27       71.    For example, Ms. Pagan was tasked with finding her practicum sites and sent

28   the required information to them.

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

72.   In addition, Ms. Pagan brought these concerns forward to the dean back in January 2021—not the other way around.

73.   Among other things, Ms. Pagan's GPA is at stake; she had a 4.0 in the program.

74.   Ms. Pagan is not willing to take a "D" in NURS 754 as threatened and then changed in March 2022 by Luke Gentala, nor does she believe at this time that she is willing to continue in this subpar program, given the lack of responsiveness from this university.

75.   Ms. Pagan also has correspondence from the faculty member who was teaching the recent course in which she has an "I."

76.   The adjunct faculty member, herself, apologized to Ms. Pagan for what Liberty was doing to her.

77.   In December 2021, Ms. Pagan received a response from Mr. Luke Gentala. Apparently, Liberty was receiving so many applications that they were now "wait listing" prospective students, which is apparently why Mr. Gentala was proposing a Summer 2022 start.

78.   Also, due to the demand of a PMHNP program, Liberty was increasing its tuition in 2022.

79.   Ms. Pagan had at least three concerns with Mr. Gentala's December 2021 response:

a.   She never started NU 755; the course in question was NU 754 in which she has an "incomplete" (I). What Ms. Pagan *will not* accept is a "D" in a course that Liberty is now insisting she restart (which was a part of her initial request because she learned little to nothing and too much time had passed, and this was blatantly ignored by the university).

b.   Somewhere in Liberty's policies, it states that students have to complete the post-doctoral certificate program within two years of matriculation. Thus, unless Ms. Pagan were to resume this program in the spring of 2022, she

1    would be out of time as she began this program in August 2020.

2        c.    Ms. Pagan *is not* willing to pay to take the same course over; nor is she

3            willing to pay more in tuition for a less than subpar program.

4        80.    In March 2022, Ms. Pagan decided to check the Liberty University email to

5    see if Mr. Gentala responded. It was at that time she noticed that Liberty had taken it upon

6    itself to automatically enroll her in the Summer 2022 semester.

7        81.    Ms. Pagan was not in contact with Liberty since Mr. Gentala last reached out

8    to her.

9        82.    No one consulted Ms. Pagan regarding this course enrollment.

10       83.    Upon information and belief, Liberty has a stipulation by which post-

11   graduate certificates must be completed within two years of matriculation.

12       84.    Ms. Pagan began the program in August 2020 with an expectation to

13   complete in August 2021. Due to the time that has passed, Ms. Pagan would not fit this

14   criteria nor would she consider taking these courses over.

15       85.    She has a 4.0 in all didactic coursework.

16       86.    Mr. Gentala or someone at Liberty took it upon themselves to automatically

17   enroll Ms. Pagan in the Summer 2022 semester.

18       87.    But Ms. Pagan was not even given a call by anyone at Liberty regarding it.

19       88.    She did not agree to this; she learned of this by checking the Liberty email.

20       89.    Upon information and belief, Mr. Gentala took it upon himself to register Ms.

21   Pagan for the summer course without first consulting her.

22       90.    Further, Mr. Gentala is both the registrar and the ombudsman, which is, upon

23   information and belief, a conflict of interest, as ombudsmen are supposed to be neutral.

24       91.    For example, a registrar works closely with the academic programs, which

25   can certainly lead to a bias.

26       92.    Even more concerning is that Ms. Pagan does not meet the requirements to

27   take this course (NU755). She would have needed to complete NU754 *prior* to enrolling in

28   NU755.

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

- 10 -

93.     Had Ms. Pagan enrolled on her own, the computer would not have allowed her to move forward with selecting NU755 as she has an "I" in the course NU754.

94.     Ms. Pagan is perplexed as to why she has been enrolled in a course after not taking a class for over a year at this university.

95.     Ms. Pagan is also being charged for this course, and, upon information and belief, for the costs associated with another background check, Castlebranch access (repository for all graduate nursing documents), etc.

96.     As of March 24, 2022, Mr. Gentala changed Ms. Pagan's grade in the NU754 course from an "I" to a "D," damaging her previously perfect GPA at Liberty.

97.     Further, as of March 24, 2022, Mr. Gentala informed Ms. Pagan that she would need to file an appeal to continue in the program without repeating all of the courses—at her expense, and with a tuition increase—despite the fact that these delays and errors have been due to Liberty and its own internal record-keeping.

98.     In the event Ms. Pagan would decide to complete this program, she should not have to absorb these costs.

## III.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Common Law Fraud / Fraudulent Inducement—All Defendants

97.     Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

98.     Defendants made one or more representations, statements, omissions, and/or disclosures to Ms. Pagan in connection with Ms. Pagan's enrollment and continued matriculation at Liberty.

99.     The misrepresentations made by Defendants included, but are not limited to, those described in Section II above.

100.    Defendants' representations, statements, omissions, and/or disclosures were false, misleading, and fraudulent, and/or with reckless disregard as to their truth.

101.    The representations, statements, advertisements, and/or disclosures were

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

material in that they were sufficiently important to influence a reasonable student's (and Ms. Pagan's) actions and decisions, and/or the facts omitted from Defendants' representations, statements, advertisements, and disclosures rendered the representations, statements, advertisements, and disclosures misleading, and they were also sufficiently important to influence a reasonable student's (and Ms. Pagan's) actions and decisions, and included the intentional or reckless omission of facts that were then present, existing, and known to Defendants.

102.   These misrepresentations would be likely to affect the conduct of a reasonable person with reference to the transaction in question.

103.   Defendants knew that their representations, statements, advertisements, and/or disclosures were false or materially incomplete, and therefore false and misleading, or acted with reckless disregard as to their truth. In carrying out their fraud, Defendants acted with an evil mind or engaged in wanton or reckless conduct.

104.   Defendants intended that Ms. Pagan would act upon the representations, statements, advertisements, and/or disclosures in the manner reasonably contemplated by Defendants.

105.   Ms. Pagan did not know that Defendants' representations, statements, advertisements, and/or disclosures were materially incomplete, false and/or misleading, and she acted upon the fraudulent representations, statements, advertisements, and disclosures in a manner reasonably contemplated by Defendants by enrolling at Liberty and continuing to be matriculated there.

106.   Ms. Pagan never would have enrolled at Liberty nor continued to be matriculated there had Ms. Pagan known that these representations were indeed misrepresentations, or were otherwise false, incorrect, misleading, and/or incomplete.

107.   These misrepresentations were an inducing cause and "material consideration" for Ms. Pagan enrolling at and continuing to be matriculated at Liberty.

108.   Ms. Pagan relied upon these misrepresentations and her reliance was reasonable and justified under the circumstances.

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

- 12 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

109.   Ms. Pagan had a reasonable right to rely, and did rely, upon the truth, accuracy, and completeness of the representations, statements, advertisements, and/or disclosures made by Defendants.

110.   Ms. Pagan has been and will continue to be injured as a result of these misrepresentations.

111.   Ms. Pagan has been and will continue to be consequently and proximately injured by the materially incomplete, false, and misleading statements of fact by Defendants and is entitled to an award of damages and/or any other available remedies in a form and amount to be determined by the jury, including an award of punitive damages.

## SECOND CLAIM FOR RELIEF

### Consumer Fraud (A.R.S. §§ 44-1521, *et seq.*)—All Defendants

112.   Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

113.   As discussed in more detail above, Defendants made one or more representations, statements, omissions, and/or disclosures to Ms. Pagan in connection with Ms. Pagan's enrollment and continued matriculation at Liberty.

114.   It is clear by Defendants' inactions and omissions that such statements, promises, and advertisements were materially false.

115.   In making such statements, Defendants intended that Plaintiff would rely on these material misstatements, false promises, and false advertisements in choosing to enroll and continue matriculated at Liberty.

116.   Plaintiff did in fact rely on Defendants' misstatements, omissions, false promises, and false advertisements, and as a result, Plaintiff has suffered damages to be proven at trial, plus interest, together with costs, attorneys' fees and costs of collection, and other relief the Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### Negligent/Innocent Misrepresentation—All Defendants

117.   Plaintiff incorporates by reference each and every allegation of this complaint

- 13 -

1   as if again alleged in full.

2     118. Alternatively to other claims for relief described above, Defendants made

3   various representations to Ms. Pagan in connection with Ms. Pagan's enrollment and

4   continued matriculation at Liberty.

5     119. Defendants intended that Ms. Pagan rely on these representations and

6   provided them for that purpose.

7     120. Some of Defendants' representations were misrepresentations, or were

8   otherwise false, incorrect, misleading, or incomplete.

9     121. Defendants may or may not have known of the representations' false,

10  incorrect, misleading, or incomplete nature.

11    122. The misrepresentations made by Defendants included, but are not limited to,

12  those described in Section II above.

13    123. These misrepresentations were material.

14    124. These misrepresentations would be likely to affect the conduct of a

15  reasonable person with reference to the transactions in question.

16    125. These misrepresentations were an inducing cause and "material

17  consideration" for Ms. Pagan's enrollment and continued matriculation at Liberty.

18    126. Ms. Pagan relied upon these misrepresentations and her reliance was

19  justified.

20    127. Ms. Pagan never would have enrolled nor continued matriculated at Liberty

21  had she known that these representations were indeed misrepresentations, or were

22  otherwise false, incorrect, misleading, or incomplete.

23    128. Ms. Pagan was and will continue to be injured as a result of these

24  misrepresentations.

25    129. Therefore, Ms. Pagan is entitled to her damages.

26    130. Ms. Pagan may be entitled to attorneys' fees under A.R.S. § 12-341.01 and

27  she is entitled to her costs under A.R.S. § 12-341, and/or any other available remedies in a

28  form and amount to be determined by the Court.

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

- 14 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive — Suite 200
Scottsdale, AZ 85255
480-483-9600

## FOURTH CLAIM FOR RELIEF

### Negligence—All Defendants

131.   Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

132.   At all relevant times, Liberty owed a duty to Ms. Pagan and to the general public to run its nursing programs in such a way as to not: (1) falsely advertise the services and certifications it was qualified to provide; (2) needlessly incur tuition and other costs to its students; (3) negatively affect its students' transcripts and thus, potentially, their academic prospects and careers; (4) devalue the certifications which it provides through inflated, unjust, and/or non-standard grading practices; and (5) upon information and belief, grant certifications to unqualified students.

133.   Liberty, by, upon information and belief, failing to do the above, breached its duties to Ms. Pagan and to the general public.

134.   Liberty's negligent actions actually and proximately caused damages to Ms. Pagan in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract—All Defendants

135.   Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

136.   Upon information and belief, Liberty and Ms. Pagan entered into one or more written agreements in connection with Ms. Pagan's enrollment and continued matriculation at Liberty, which constitute(s) one or more legally binding contracts between Ms. Pagan and Liberty.

137.   Upon information and belief, under the contract(s), and for money and/or other consideration received, Liberty agreed to provide Ms. Pagan with the post-doctoral nursing education, opportunities, and, upon completion of certain requirements, certification(s) which it advertised.

138.   Liberty has failed to abide by these terms.

- 15 -

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

139.    Ms. Pagan has not excused this material breach or material breaches.

140.    Ms. Pagan has fulfilled her obligations under the contract(s).

141.    As a result of Liberty's breaches of the contract(s), Ms. Pagan was injured, will continue to be injured, and is entitled to an award of damages, attorneys' fees under A.R.S. § 12-341.01, costs under A.R.S. § 12-341, and any other available remedies in a form and amount to be determined by the trier-of- fact.

## SIXTH CLAIM FOR RELIEF

### Breach of the Covenant of Good Faith and Fair Dealing—All Defendants

142.    Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

143.    Under Arizona law, there is an implied covenant of good faith and fair dealing in every written contract.

144.    As herein alleged, the contract(s) constituted one or more legally binding contracts between Ms. Pagan and Liberty.

145.    Liberty's acts described herein were intentional and in breach of the covenant of good faith and fair dealing owed to Ms. Pagan under the contract(s).

146.    In some instances such as, but not limited to, misrepresenting Liberty's qualifications, or by refusing to refund Ms. Pagan's full tuition upon Ms. Pagan's reasonable complaints, Liberty acted with the intent to destroy Ms. Pagan's right to receive the benefits of the contract(s).

147.    Liberty's acts were gross, wanton, intentional, and/or in reckless disregard to the rights of Ms. Pagan, thus justifying an award of punitive damages in an amount to be proven at trial, but sufficient to deter such actions in the future.

## SEVENTH CLAIM FOR RELIEF

### Promissory Estoppel—All Defendants

148.    Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

149.    For consideration received and promised, Defendants explicitly and/or

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1  implicitly promised and/or agreed to provide Ms. Pagan with the education, value, and

2  certifications advertised to potential students in Arizona.

3      150.    Liberty failed to provide Ms. Pagan with, or is otherwise incapable of

4  providing Ms. Pagan with, the education, value, and certifications Liberty advertised.

5      151.    Defendants' actions and inactions as described elsewhere herein constitute

6  one or more failures of consideration and constituted one or more material breaches of

7  Liberty's promises to Ms. Pagan.

8      152.    It was reasonably foreseeable to Defendants that Ms. Pagan would rely upon

9  these promises.

10      153.    Ms. Pagan justifiably relied upon these promises when she paid Liberty

11  tuition money.

12      154.    Ms. Pagan incurred loss and suffered detriment as the result of such reliance.

13      155.    Defendants are responsible for this loss or detriment and should be held

14  liable for the same under Arizona statutory or case law.

15      156.    Ms. Pagan has not excused Defendants' violations of their promises.

16      157.    Ms. Pagan has fulfilled her obligations in connection with receiving the

17  benefit of Liberty's promises.

18      158.    As a result of Defendants' violations of their promises, Ms. Pagan was

19  injured, will continue to be injured, and is entitled to an award of damages, attorneys' fees

20  under A.R.S. § 12-341.01, and/or any other available remedies in a form and amount to be

21  determined by the trier-of-fact.

22                        **EIGHTH CLAIM FOR RELIEF**

23              **Unjust Enrichment / Disgorgement—All Defendants**

24      159.    Plaintiff incorporates by reference each and every allegation of this complaint

25  as if again alleged in full.

26      160.    Defendants have been directly enriched by Ms. Pagan's funds by Defendants'

27  wrongful conduct as alleged herein.

28      161.    Ms. Pagan has paid Liberty a significant amount of money for tuition and

- 17 -

other costs under the promises made by Liberty and has not yet received in full the services, education, value, or certifications agreed upon.

162. To the extent that Defendants have received and retained payment from Ms. Pagan to which they are not legally or equitably entitled, Ms. Pagan have been impoverished as a result of Defendants' wrongful conduct, as alleged herein.

163. There is a connection between the enrichment and the impoverishment, as alleged herein.

164. There is an absence of justification for the enrichment and the impoverishment, as alleged herein.

165. To the extent that there is no adequate legal remedy and/or because the circumstances alleged herein are unjust under principles of equity, an award should be made against one or more Defendants and in favor of Ms. Pagan requiring Defendants to disgorge the amounts obtained from the wrongful conduct, and (to the extent not duplicative) to pay Ms. Pagan the amount she was impoverished.

**NINTH CLAIM FOR RELIEF**

**Declaratory Judgment—All Defendants**

166. Plaintiff incorporates by reference each and every allegation of this complaint as if again alleged in full.

167. A controversy presently exists between Ms. Pagan and Liberty, in that Liberty is reporting a false, incomplete, and/or other subpar grade for Ms. Pagan's coursework, thus harming her transcript, her academic records and/or prospects, and/or, potentially, her career prospects.

168. A controversy presently exists between Ms. Pagan and Liberty, in that Liberty has taken the position that Ms. Pagan would need to file an appeal to continue in the program without repeating all of the courses—at her expense, and with a tuition increase—despite the fact that these delays and errors have been due to Liberty and its own internal record-keeping.

169. A judicial determination under A.R.S § 12-1831 regarding these issues and

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1   controversies is necessary and required so that a proper determination can be made as to

2   the rights and obligations of the parties.

3          170.   The Court is requested to exercise its equitable powers under A.R.S. § 12-

4   1831 and order Defendants to promptly and permanently correct any false incomplete or

5   other subpar grade for Ms. Pagan's coursework on her transcript or otherwise.

6                          **TENTH CLAIM FOR RELIEF**

7          **Injunctive Relief / Temporary Restraining Order—All Defendants**

8          170.   Plaintiff incorporates by reference each and every allegation of this complaint

9   as if again alleged in full.

10         171.   Liberty intends to and will, unless restrained and enjoined by the Court, (1)

11  continue reporting a false incomplete or other subpar grade for Ms. Pagan's coursework

12  and (2) enroll, continue to keep Ms. Pagan matriculated in, and/or charge Ms. Pagan for

13  any courses in Summer 2022 which she has not personally signed up for, all in violation of

14  Ms. Pagan's rights.

15         172.   Wherefore, Ms. Pagan is entitled to an order and/or judgment for injunctive

16  relief and/or a temporary restraining order restraining and enjoining Liberty from (1)

17  reporting a false incomplete or other subpar grade for her coursework and (2) enrolling,

18  continuing to keep Ms. Pagan matriculated in, or charging Ms. Pagan in any way for any

19  courses in Summer 2022 which she has not personally signed up for, all in violation of Ms.

20  Pagan's rights.

21  **IV.    DEMAND FOR JURY TRIAL**

22         173.   Plaintiff respectfully demands a trial by jury on all issues for which she is

23  entitled to one under applicable law.

24  **V.     REQUEST FOR RELIEF**

25         WHEREFORE, Plaintiff requests a judgment in her favor, and against Defendants,

26  and each of them, as follows:

27         A.     For judgment and an award of all compensatory, incidental, and

28  consequential damages against Defendants provided by law, in an amount to be determined

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1   by the trier-of-fact;

2        B.      For an award of punitive damages in an amount to be determined by the trier-

3   of-fact;

4   C.      For a declaration that the false, incomplete, and/or other subpar grade currently

5   listed for Ms. Pagan's coursework with Liberty should be corrected forthwith;

6        D.      For a declaration that Ms. Pagan is not required to file an appeal at her own

7   expense, nor with a tuition increase, to continue in the Liberty program without repeating

8   all of the courses, as these delays and errors have been due to Liberty and its own internal

9   record-keeping;

10       E.      For an order and/or judgment for injunctive relief and/or a temporary

11  restraining order restraining and enjoining Liberty from reporting any false incomplete or

12  other subpar grade for Ms. Pagan's coursework, on her transcript or otherwise;

13       F.      For Plaintiff's attorneys' fees and costs, under, without limitation, A.R.S. §§

14  12-341 and 12-341.01, which in the event of a default shall be $10,000;

15       E.      For pre-judgment and post-judgment interest at the highest rate allowed by

16  law; and

17       F.      For any other or further relief as may be deemed appropriate.

18

19       RESPECTFULLY SUBMITTED this 22nd day of July, 2022.

20                          **TITUS BRUECKNER & LEVINE PLC**

21                          By: */s/ Jeffrey D. Harris*
22                              Jeffrey D. Harris
                                8355 E. Hartford Drive, Suite 200
23                              Scottsdale, Arizona 85255
                                *Attorneys for Plaintiff Misty Pagan*
24

25

26

27

28

**TITUS BRUECKNER & LEVINE PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480–483–9600

- 20 -

# EXHIBIT   A



**CCNE**
COMMISSION ON
COLLEGIATE NURSING
EDUCATION

# Executive Summary of Changes to the 2018
## *Standards for Accreditation of Baccalaureate and Graduate Nursing Programs*

The Commission on Collegiate Nursing Education (CCNE) Board of Commissioners approved the revised *Standards for Accreditation of Baccalaureate and Graduate Nursing Programs* (*Standards*) (2018) in June 2018. This document summarizes the changes that have been made to this edition of the accreditation standards.

The 2018 *Standards* go into effect on January 1, 2019. Therefore, all baccalaureate and graduate nursing programs hosting a CCNE on-site evaluation on or after January 1, 2019 are required to address the 2018 *Standards*. (This includes a self-study document that is submitted to CCNE prior to January 1, 2019, for an on-site evaluation occurring after January 1, 2019.)

All baccalaureate and graduate nursing programs submitting a continuous improvement progress report (CIPR), compliance report, special report, or other report to CCNE on or after January 1, 2019 will need to address the 2018 *Standards*.

Programs are expected to be in compliance with the CCNE *Standards* that are in effect throughout the program's period of accreditation. Therefore, all CCNE-accredited baccalaureate and graduate nursing programs, regardless of the date of the last or next on-site evaluation, should make updates, as necessary, to demonstrate compliance with the 2018 *Standards*.

Summary of Changes

General:

- In each of the four standards, key elements have been re-numbered. Some key elements have been divided into two or more key elements. Other key elements have been re-ordered within the same standard or have moved from one standard to another. In some instances, such as dividing a key element into multiple key elements, the intent was to simplify the information that a program needs to present for each key element.

- In the 2013 *Standards*, only three specific key elements in Standard IV could be designated as "not applicable." In the newly revised standards, "not applicable" is available as a choice for specific key elements in Standards II, III, and IV.

- Items listed in Supporting Documentation at the end of each standard are now required to be provided in the self-study document or on site in the case of an on-site evaluation. CCNE recognizes that reasonable alternatives exist when providing documentation to address the key elements.

- Throughout the standards, language has been added to clarify that "faculty" includes full-time,

*Serving the Public Interest*
*Through Quality Accreditation*

part-time, adjunct, tenured, non-tenured, or other faculty groups.



2

Standard I:

- The revised edition of the NTF *Criteria for Evaluation of Nurse Practitioner Programs* (2016) is identified in Key Element I-B, for programs with nurse practitioner offerings.

- All programs should refer to the updated statements contained in Key Element I-H if the program chooses to publicly disclose its CCNE accreditation status. Note that the CCNE address and website changed in 2017, so all programs are expected to make the necessary adjustments to their documents, publications, and websites, if they have not done so already.

Standard II:

- Language has been added that more clearly defines CCNE's expectations in relation to physical resources and clinical sites. Specifically, Key Element II-B states, in part, "The program is responsible for ensuring adequate physical resources and clinical sites. Clinical sites are sufficient, appropriate, and available to achieve the program's mission, goals, and expected outcomes." The program needs to meet these expectations regardless of whether the student or the program finds the clinical site.

- Key Element II-D has been revised to state "The chief nurse administrator of the nursing unit...". The phrase "of the nursing unit" was added to clarify the expectation that the nursing unit has a single chief nurse administrator.

- In Key Element II-F, CCNE's expectation has been clarified that individuals serving in roles such as mentors, guides, and coaches are to be included by programs when addressing preceptors. Please note, this key element does not prohibit programs from allowing students to play an active role in identifying a preceptor, but if a student is unable to find an appropriate preceptor, when used by the program as an extension of faculty, the program is ultimately responsible for doing so.

Standard III:

- In relation to the professional nursing standards and guidelines required by CCNE, note that Key Elements III-C, III-D, and III-E now reference the revised edition of the NTF *Criteria for Evaluation of Nurse Practitioner Programs* (2016), for graduate programs that prepare nurse practitioners.

- A statement has been added to Key Element III-G, which states "Teaching-learning practices ... expose students to individuals with diverse life experiences, perspectives, and backgrounds" (3rd bullet). The elaboration states that teaching-learning practices "broaden student perspectives."

- Key Element III-H has been expanded to include the concept of interprofessional education (IPE). The key element indicates, "The curriculum includes planned clinical practice experiences that... foster interprofessional collaborative practice..." (2nd bullet). Additionally, the elaboration states, "Clinical practice experiences include opportunities for interprofessional collaboration."

- The elaboration to Key Element III-H includes a statement clarifying that programs preparing individuals for a direct care role must provide individuals with direct care clinical practice experiences: "Programs that have a direct care focus (including but not limited to, post-licensure baccalaureate and nurse educator tracks) provide direct care experiences designed to advance the knowledge and expertise of students in a clinical area of practice."

- While the following statement is not new to the 2018 *Standards*, the elaboration to Key Element III-H specifically states, "Clinical practice experiences are provided for students in all programs, including those with distance education offerings." Please note, this key element does not prohibit programs from allowing students to play an active role in identifying clinical practice experiences, but if a student is unable to find an appropriate clinical practice experience, the program is ultimately responsible for providing this.

3

Standard IV:

- Key Elements IV-B, IV-C, and IV-D specifically require that programs provide data by calendar year. As a result of many programs seeking clarity about the time frame for a calendar year, a calendar year is specifically defined as January 1-December 31. CCNE recognizes that programs may define their fiscal and academic years differently, but completion, licensure, and certification rates must be reported to CCNE based on a calendar year (as opposed to an academic or fiscal year).

- Key Elements IV-B, IV-C, IV-D, and IV-E provide programs with multiple options as to how data may be presented in order to demonstrate compliance with CCNE's expected level of achievement for each of these key elements. A program demonstrates compliance with each key element using *any one* of the options provided.

- Key Element IV-G has been updated to emphasize that programs are to present *aggregate* faculty outcome data, removing the directive to provide *individual* faculty outcome data that was included in the 2013 *Standards*. The data presented should be congruent with the faculty expectations defined by the program in Standard I, Key Element I-D. For instance, if the program has identified scholarship as an expected faculty outcome in Key Element I-D, aggregate faculty outcome data specific to scholarship should be presented in Key Element IV-G. Additionally, while not new to the 2018 *Standards*, the program must compare *actual* faculty outcomes to *expected levels of achievement*.

- The elaboration to Key Element IV-I specifies that the program "demonstrates achievement of outcomes other than those related to completion rates (Key Element IV-B), licensure pass rates (Key Element IV-C), certification pass rates (Key Element IV-D), employment rates (Key Element IV-E), and faculty (Key Element IV-G)." The program is expected to present the expected *and* the actual levels of achievement for each of these "other" program outcomes, and "demonstrate that the program, overall, is achieving its outcomes."

## Resources

The 2018 *Standards* are accessible at https://www.aacnnursing.org/Portals/42/CCNE/PDF/Standards-Final-2018.pdf. Additionally, a crosswalk table showing the relationship between the 2013 and 2018 *Standards*, as well as a template for writing the self-study document, are now available on the CCNE website and can be found at https://www.aacnnursing.org/CCNE-Accreditation/Resource-Documents/Program-Resources.

CCNE hosted four webinars in August 2018 to familiarize and educate program administrators, faculty, on-site evaluators, and others about the revised *Standards*. These webinars are archived on the CCNE website at https://www.aacnnursing.org/CCNE/Resource-Documents. These webinars are also available on CCNE's YouTube channel at https://www.youtube.com/channel/UCCr_uAWAKTE3JnWSTiswUUA.

CCNE will be presenting the 2018 *Standards* at each of the upcoming AACN Education Conferences (Baccalaureate, Master's, and Doctoral). We welcome your participation in those sessions. Details about these conferences and how to register are accessible at https://www.aacnnursing.org/Professional-Development/Upcoming-Conferences.

As always, the CCNE staff are available for guidance. If you have questions about the 2018 *Standards*, please contact Dr. Daniel Michalski, CCNE Director of Accreditation Services, at 202-887-6791 x253 or dmichalski@ccneaccreditation.org

4

# EXHIBIT   B

# PMHNP Practicum Guide

## Contact Us

**Practicum Coordinator**
Practicumcoordinator@liberty.edu
F: 434-582-3890

**Assistant Director of Online Admissions**
John East

jeast@liberty.edu
O: 434-592-6505
F: 434-582-3890

## Basic Information

- All didactic courses are 8 weeks in length. The PMHNP program offers these courses in the B term (first 8 weeks) and the D term (second 8 weeks) in Fall, Spring, and Summer semesters.
- The Practicum course – NURS 754 and NURS 755 are A term courses (the entire semester)
- Successful completion of the didactic courses – NURS 751, NURS 752, and NURS 753 are part of the pre-practicum requirements

## Getting Started

Welcome to the PMHNP Program. We are so excited to support you!

Week One to-do list:

- Set Up Typhon:
    - You will receive your Typhon Login and password information. You will pay the $90.00, one-time fee to access Typhon.
    - Typhon will be used throughout your program for practicum documentation and your portfolio
- Purchase CastleBranch:
    - CastleBranch is our onboarding platform where students submit the required information.

# Purchasing CastleBranch Steps:

Please follow the steps below to purchase your CastleBranch Account. We recommend that you purchase it as soon as possible. Please follow the directions carefully.

**Purchasing Instructions:**

1. Click on the link: **https://portal.castlebranch.com/LM71**
2. Click on Place Order button
3. Click the drop-down list and select Nursing and then DNP
4. For all new students, you will need to purchase the following:

   - LN12adt: I need to order my Background Check, Fingerprint, Drug Screening, Compliance Tracker, and OSHA/HIPPA Modules.

If you have any issues with purchasing or uploading through CastleBranch the customer service contact is 888-723-4263 or underline customerexp.cu@castlebranch.com.

## Background checks:

Impute required information and the background check should process within a week's time frame.

## Fingerprint checks:

Fingerprint check may take 10 – 14 business days to complete. Please do not delay when completing this task. At times, due to the high volume of submissions, there may be a delay of up to 6 weeks. **NOTE: If you are a non-US citizen and have to submit your FBI Fingerprints using the Rolled Fingerprints please note that it will take 11-12 weeks to get your results.**

## Drug Screen:

For most drug screens, you will receive a Chain of Custody form through your CastleBranch account within 24 hours. Download, print the form and take the form to the recommended site. If you have a negative drug screen, the result should be available within 48 hours. The Drug screen is an annual requirement.

3

Compliance Tracker:

- **MMR (one of the following is required):**
  - 2 vaccines or positive antibody titer (lab report or physician verification of results required).
  - If series is in process, submit where you are and a new alert will be created for you to complete the series.
  - If the titer is equivocal, new alerts will be created for you to receive a booster and a repeat titer. If the repeat titer is still negative or equivocal a new alert will be created for you to receive a second booster.
  - If the titer is negative, new alerts will be created for you to repeat the vaccination series and titer. If the repeat titer is still negative or equivocal a new alert will be created for you to receive a second booster.
- **Varicella (one of the following is required):**
  - 2 vaccines or positive antibody titer (lab report or physician verification of results required).
  - If series is in process, submit where you are and a new alert will be created for you to complete the series.
  - If the titer is equivocal, new alerts will be created for you to receive a booster and a repeat titer. If the repeat titer is still negative or equivocal a new alert will be created for you to receive a second booster.
  - If the titer is negative, new alerts will be created for you to repeat the vaccination series and titer. If the repeat titer is still negative or equivocal a new alert will be *created for you to receive a second booster.*
- **Hepatitis B (one of the following is required):**
  - 3 vaccines or positive antibody titer (lab report or physician verification of results required) OR
  - Declination waiver signed by a healthcare provider.
  - If series is in process, submit your first TWO VACCINES a new alert will be created for you to complete the series.
  - If the titer is equivocal, new alerts will be created for you to receive a booster and a repeat titer. If the repeat titer is still negative or equivocal it is recommended you continue with the Hepatitis B series, but it is not required.
  - If the titer is negative, new alerts will be created for you to repeat the vaccination series and titer. If the repeat titer is still negative or equivocal it is recommended you continue with the Hepatitis B series, but it is not required.
- **Tetanus:**
  - Submit documentation of a Td OR Tdap vaccine administered within the past 10 years. The renewal will be set 10 years from the administered date.
- **Influenza:**
  - Does your clinical site require an influenza vaccine? If yes, submit documentation of a flu shot administered during the current flu season (flu shot from any month will be accepted). If no, this requirement will be marked complete. Annual

4

requirement

- **Tuberculosis (one of the following is required):**
  - ○ Negative one-step skin test from the past 12 months or Negative two-step skin test (1-3 weeks apart) from the past 12 months or Negative QuantiFERON Gold blood test from the past 12 months If positive results, submit a clear chest x-ray from the past 10 years AND physician clearance documented on letterhead stating treatment from the past 12 months.
  - ○ If the chest x-ray is positive this requirement will be rejected and you will be referred to your school administrator.
  - ○ The renewal will be set for 1 year for negative results and 10 years from the date of a chest x-ray. Upon renewal one of the following is required:
  - ○ Negative one-step skin test OR Negative QuantiFERON Gold blood test OR
  - ○ If positive results, submit a clear chest x-ray from the past 10 years AND physician clearance documented on letterhead stating treatment from the past 12 months.
  - ○ If the chest x-ray is positive this requirement will be rejected and you will be referred to your school administrator.
- **Meningitis:**
  - ○ Does your clinical site require you to have a meningitis vaccination? If yes, submit your meningitis vaccine. If no, this requirement will be marked complete.
- **CPR:**
  - ○ Submit your current CPR certification. Must be American Heart Association Healthcare Provider course. Must be front and back of card OR eCard. The card must be signed; eCard does not need a signature. The renewal date will be set for the expiration date on the certification.
- **RN License:**
  - ○ Provide documentation of your current RN license OR verification of licensure through the state website. Renewal will be set based on the expiration of licensure.
- **APRN License:**
  - ○ Are you a Post-MSN DNP APRN student? If yes, submit your APRN license from any state. Renewal will be set based on the expiration of licensure. If no, this requirement will be marked complete.
- **APRN Certification:**
  - ○ Are you a Post-MSN DNP APRN student? If yes, submit your APRN Certification. Renewal will be set based on the expiration of certification. If no, this requirement will be marked complete.
- **Physical Exam:**
  - ○ Upload documentation of your completed physical examination. The exam must be completed on the form available for download from this requirement, be completed and signed by a medical professional, and be dated within the past 6 months.

5

- **Required Practicum Hours for Program Completion:**
  - o   Not required for the PMHNP program, please request that it is canceled.
- **Receipt of Student Handbook Form:**
  - o   Read the DNP Student handbook, complete the Student Handbook form, and submit to CastleBranch.
- **DNP Program Orientation Attestation Form:**
  - o   Review the DNP Program Orientation in the DNP Program Center, complete the Attestation, and submit to CastleBranch.
- **Student Identification Name Badge**
  - o   Purchase your student ID badge and notify CastleBranch once received
- **Release of Records.**
  - o   Complete the required form and submit to CastleBranch.

LN12eLeaning Tracker:

Review the OSHA and HIPPA Modules – 5 in total – and submit the Certification of completion for each module.

# Practicum Information:

Preceptors:

- Primary preceptors/Prescribers are either a Psychiatrist or a Psychiatric Mental Health Nurse Practitioner
  - o   A PMHNP must be a year post-graduate to precept
  - o   A primary preceptor is required to register
  - o   Can precept 50% to 100% of hours
- Secondary preceptors/Non-prescribers are licensed Professional Counselor (LPC), psychologist, or social worker (MSW)
  - o   Can only precept up to 50% of hours for either NURS 754 and NURS 755

Licensing:

Students must hold an RN license in the state they complete practicum. Students are encouraged to secure a compact license if possible to expand their site and preceptor options.

State Board of Nursing:

The PMHNP must be completed in an approved state. Please follow up if you have any questions about your sites approval status

6

### NURS 754 Practicum I (Adult and Geriatric):

This practicum course provides extensive experience to prepare the student for the professional role of a psychiatric mental health nurse practitioner. Students will provide interviewing, screening, diagnostic testing, episodic, acute, and chronic care to adult and geriatric clients. The student should demonstrate evidence-based practice behaviors and adhere to standards of care to order and interpret screening/diagnostic tests, prescribe therapeutics, and develop health prevention/promotion, and health maintenance plans. Students should be able to assess adults and geriatric clients and develop a plan of care in consultation with the preceptor. The students should provide holistic care through the integration of ethnicity, culture, and community.

Required Hours: 224

Recommended Inpatient hours: 24

### NURS 755 Practicum II (Pediatric and Family):

This practicum course provides extensive experience to prepare the student for the professional role of a psychiatric mental health nurse practitioner. Students will provide interviewing, screening, diagnostic testing, episodic, acute, and chronic care to child/adolescent clients and their families.  The student should demonstrate evidence-based practice behaviors and adhere to standards of care to order and interpret screening/diagnostic tests, prescribe therapeutics, and develop health prevention/promotion, and health maintenance plans. Students should be able to assess the pediatric clients and families and develop a plan of care in consultation with the preceptor. The students should provide holistic care through the integration of ethnicity, culture, and community.

Required Hours: 280

Recommended Inpatient hours: 40

### Telehealth:

- There must be a mix of in-person and telehealth encounters.
- The student may provide telehealth patient care from a clinical site or on a shared platform with the preceptor.
- You may participate in telehealth patient care under the direct supervision of your preceptor within the policies and procedures set forth by the organization.
- Telehealth visits must be precepted visits.
- Telehealth visits should allow for participation and delivery of care by the student rather than observational visits.

**7**

## Form 9:

Completion of Form 9, is the first step in the approval process for a site and preceptor. When completing via the link, please ensure that you have your preceptor and sites contact information, your preceptor's CV and if they are a PMHNP you will also need to submit their ANCC certification:

## Form 10:

Completion of Form 10 formalizes the relationship between student and preceptor. Submit this form to the Practicum Coordinator to be placed in your file.

## Scheduling Hours:

Ensure that you and your preceptor have established a schedule to complete the required number of hours during your course start and end dates. It is also recommended that you have flexibility with your schedule in case of missed days due to illness, weather, etc.

# EXHIBIT   C



# DOCTOR OF NURSING PRACTICE STUDENT HANDBOOK 2019-2020

Liberty University School of Nursing



**DNP Program**
**Practicum/Clinical Site/Preceptor**
**Approval Form**

# FORM NINE

**Note:** A separate form must be used for each site, even within the same system, to document the preceptor. Please print/type information.

Student Name: _____   Date: _____

Practicum Experience: ☐ Family Nurse Practitioner Practicum   ☐ DNP Practicum

Type of Site (select one) ☐ Clinic/ Office   ☐ Hospital   ☐ Other-_____

Practicum Site (Name): _____

Practicum Site Address: _____

_____

Site Website: _____

Preceptor Name /Credentials _____License _____State _____

Preceptor Email: _____ Fax: _____ Phone: _____

Highest Degree of Preceptor (check one) ☐MSN   ☐DNP   ☐MD   ☐DO   ☐PhD   ☐Other_____

Primary Preceptor (Name): _____

Secondary Preceptor (Name):  _____

### NOTE:  Preceptor Curriculum Vitae must also be attached.

**Family Nurse Practitioner Hours/Course Requirements**

(This may vary as students may select more than one site or choose a specialty, and can be documented by writing in the change.)

**Family Nurse Practitioner Course/Hours**

| | | |
|---|---|---|
| ☐ | NURS 730 FNP Practicum I | 112 hrs |
| ☐ | NURS 740 FNP Practicum I | 56 hrs |
| ☐ | NURS 741 FNP Practicum I | 56 hrs |
| ☐ | NURS 736 FNP Practicum II | 224 hrs |
| ☐ | NURS 743 FNP Practicum II | 112 hrs |
| ☐ | NURS 744 FNP Practicum II | 112 hrs |
| ☐ | NURS 838 FNP Practicum III | 280 hrs |

**DNP Practicum Course/ Estimated Hours**

| | | |
|---|---|---|
| ☐ | NURS 840 | 112 hrs or_____ |
| ☐ | NURS 841 | 112 hrs or_____ |
| ☐ | NURS 842 | 112 hrs or _____ |
| ☐ | NURS 843 | 112 hrs or _____ |
| ☐ | NURS 844 | 112 hrs or _____ |

**Psych Mental Health Nurse Practitioner Course/Hours**

| | | |
|---|---|---|
| ☐ | NURS 754 PMHNP Practicum I | 224 hrs |
| ☐ | NURS 755 PMHNP Practicum II | 280 hrs |

Nurse Educator (elective)

| | | |
|---|---|---|
| ☐ | NURS 767 Transition to Nurse Educator | 50 hrs |

152

**Note: If attending a specialty or short term site, indicate course and planned hours in attendance.**

Course_____ Hours planned_____

**Contact Person (to facilitate the establishment of an affiliation agreement between LU and clinical site)**

Name: _____

Title: _____ Department: _____

Phone (_____) _____ Fax: _____

Email: _____ Alt Email (as applicable): _____

Contact Address (If Different From Practicum Site):

_____

---

## (LUSON OFFICE USE ONLY)

Practicum/Preceptor/Clinical Site:   ☐ Approved   ☐ Declined

Date: _____Signature: _____

Affiliation agreement on file/Date _____

Preceptor Agreement on file/Date _____

Notes:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



**DNP Program**
**Clinical Practicum Contract**

# FORM TEN

Student Name: _____

Concentration: _____

Practicum Courses (Check all that apply):

☐ NURS 730      ☐ NURS 744      ☐ NURS 840

☐ NURS 736      ☐ NURS 754      ☐ NURS 841

☐ NURS 740      ☐ NURS 755      ☐ NURS 842

☐ NURS 741      ☐ NURS 767      ☐ NURS 843

☐ NURS 743      ☐ NURS 838      ☐ NURS 844

Preceptor: _____

Agency: _____

I, _____, agree to fulfill the requirement of _____ practicum hours, to be initiated in NURS _____ and completed by the conclusion of the semester in which I am enrolled in NURS_____.

_____ will act as preceptor, providing weekly consultation, guidance, and assistance in problem solving as needed. The goals and objectives as set forth in this contract (see attached page) may be renegotiated and signed by all parties as named above.

**Policies:**  I agree to abide by the policies set forth in the Graduate Nursing Student Handbook, which I acknowledge I have received, read and understand. In keeping with these promises, I will also abide by all obligations imposed upon me by any affiliation agreement entered into by Liberty University and my practicum site.

**Release of Confidential Information:** To allow my practicum study to occur, I hereby authorize Liberty University to release information about me to my practicum site and preceptor and I waive any right of confidentiality afforded to me by the Family Education Rights and Privacy Act regarding such information.

**Indemnity:** I hereby release, waive my right recover against, and agree to indemnify, defend, and hold harmless Liberty University Inc. and all of its operators, and parent subsidiary and related entities, and its and their respective officers, directors, employees, agents, servants, and insurers (hereinafter jointly referred to as

154

the "Indemnitee") from and for any and all claims or causes of action for any losses, damages, property damage, property loss or theft, cost, expenses (including attorney's fees and opinion witness fees), complaints, personal injury, death or other loss arising form or relating in any way to my participation in practicum study, including, without limitation, my travel to, from and during the practicum study, and wrongful acts of others that are harmful to me.

**Waiver:** I hereby waive any and all claims that may arise against Liberty University, Inc. and all of its operators, and parent, subsidiary and related entities, and its and their respective officers, directors, employees, agents, servants and insurers as a result of or in any way related to my participation in practicum study, including, without limitation, my travel to, from and during the practicum study, and wrongful acts of others that are harmful to me, including but not limited to claims alleging negligence, gross negligence, and/or willful and wanton bad acts.

**Covenant Not To Sue:** I promise and agree that I will not sue Liberty University, Inc. or any of its operators, or parent, subsidiary and related entities, or its or their respective officers, directors, employees, agents, servants and insurers for any damages, losses, claims, causes of action, suits, demands, costs, complaints, including those resulting from my illness, injury, and/or death, released and waived in the two preceding paragraphs. The undersigned student further agrees that Liberty University, Inc. may plead this agreement as a full and complete defense to any suit brought in violation of this promise.

**Agreements Not Limited by Actions of Liberty University:** The agreements and obligations under the three preceding paragraphs shall not be limited or reduced in any way because any of the losses, damages, property damage, property loss or theft, costs, complaints, personal injury, death or other loss, including those resulting from the undersigned's illness, injury, and/or death, arise or result, in whole or in part, from the negligence of, or breach of any express or implied warranty or duty by Liberty University, or any of its operators, or parent, subsidiary and related entities, or its or their respective officers, directors, employees, agents, servants, and insurers.

Liberty University, Inc. shall be deemed a third-party beneficiary of this contract.

## Signatures:

Student: _____
(Print Name)

Student: _____ Date: _____
(Signature)

Preceptor: _____
(Print Name and Credentials)

Preceptor: _____ Date: _____
(Signature)

# EXHIBIT   D

## BEFORE THE ARIZONA STATE BOARD OF NURSING

| | |
|---|---|
| IN THE MATTER OF APPLICATION FOR ADVANCED PRACTICE NURSING PROGRAM | **DECREE OF CENSURE WITH CIVIL PENALTY** |
| Liberty University School of Nursing 1971 University Blvd. Lynchburg, VA 24515 | **CONSENT AGREEMENT AND ORDER NO. 201201APDL0046** |
| APPLICANT | |

The Arizona State Board of Nursing ("Board") received allegations that Liberty University ("Applicant") violated the Nurse Practice Act. In the interest of a prompt and speedy settlement of the above-captioned matter, consistent with the public interest, statutory requirements and the responsibilities of the Board, and pursuant to A.R.S. § 41-1092.07 (F)(5), the undersigned parties enter into this Consent Agreement as a final disposition of this matter.

Based on the evidence before it, the Board makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Liberty University School of Nursing ("Liberty") admitted 20 Arizona students in its APRN programs starting in Summer of 2020 prior to Board approval. 4 of the 20 students commenced clinicals in Autumn 2020 prior to approval or contact with AZBN, which is a violation of R4-19-503.

2. After Board staff's 12.8.2020 notification to Liberty of a concern regarding the program's lack of approval in Arizona, additional contacts, and Board staff's 12.23.2020 email to the Liberty University School of Nursing Dean and Director of Financial

Aid-Compliance and Processing asking them to cease and desist marketing and recruiting, Board staff received a total of 24 marketing contacts, including emails, phone calls, mailed media, between 12.17.2020 and 02.18.2021 for the Liberty University programs including the unapproved APRN programs.

3. Liberty submitted an application to the Board for approval of its APRN programs on 1.7.2021 and was presented to the Board as a companion document at its March Board meeting.

4. The Board voted: Based upon the findings of fact and statute/rule violations identified in the investigative report, upon meeting all approval requirements, signing a Consent Agreement for a Decree of Censure and a $4,000 Civil Penalty, and paying the civil penalty, grant full approval of the following programs for Liberty University: Family Nurse Practitioner BSN-DNP, Psych Mental Health Nurse Practitioner Post-Masters Certificate, Psych Mental Health Nurse Practitioner Post MS-DNP and Psych Mental Health Nurse Practitioner Post-BSN DNP programs. If not signed within 30 days and civil penalty paid within 60 days, deny approval.

## CONCLUSIONS OF LAW

Pursuant to A.R.S. §§ 32-1606, 32-1644, 32-1663 and 32-1664, the Board has subject matter and personal jurisdiction in this matter.

The conduct and circumstances described in the Findings of Fact constitute violations of A.R.S. § 32-1663 (D) as defined in and currently cited as § 32-1601 (26) "Unprofessional conduct" includes the following whether occurring in this state or elsewhere: (d)   Any   conduct or practice that is or might be harmful or dangerous to the health of a patient or the public;

(j) Violating a rule that is adopted by the Board pursuant to this chapter. (effective August 9, 2017); **A.R.S. § 32-1666. <u>Unlawful acts</u> -**

(B) It is unlawful for a person to operate a training or educational program to prepare students for licensure or certification under this chapter unless it has been approved under this chapter; Arizona Administrative Code

R4-19-502 Requirements for APRN Programs:

(A)     An educational institution or other entity that offers an APRN program in this state for RNP or CNS roles shall ensure that the program:  5. Offers a curriculum that covers the scope of practice for both the role of advanced practice as specified in A.R.S. 32-1601 and the population focus including:   (a Three separate graduate level courses in: (i) Advanced physiology and pathophysiology,  including  general  principles  across  the  lifespan;  ii)  Advanced  health assessment, which includes assessment of all human systems advance assessment techniques, concepts and approaches; iii) Advanced pharmacology, which includes pharmacodynamics, pharmacokinetics and pharmacotherapeutics of all broad category agents)

(B)  A CNS or RNP program shall appoint the following personnel) (3) Nursing faculty to teach any  APRN  course  that  includes  a  clinical  learning  experience  who  have  the  following qualifications (a) A current unencumbered RN license or multi-state privilege to practice registered nursing in Arizona; (b) A current unencumbered Arizona APRN certificate; (d) Two years of APRN clinical experience and (B)(4) Adjunct or part-time clinical faculty employed solely to supervise clinical nursing experiences shall meet all of the faculty qualifications for the APRN program they are teaching.

R4-19-503 Application for Approval of an Advanced  Practice Registered Nursing Program.

A. An administrator of an educational institution that proposes to offer a CNS or RNP program shall submit an application that includes all of the following information to the Board:

1. Role, population focus that meets the criteria in R4-19-501 program administrator and lead faculty member as required in R4-19- 502(B);

2. Name, address, and evidence verifying institutional accreditation status of the affiliated educational institution and program accreditation status of current nursing programs offered by the educational institution;

3. The mission, goals, and objectives of the program consistent with generally accepted standards for advanced practice education in the role and population focus of the program;

4. List of the required courses, and a description, measurable objectives, and content outline for each required course consistent with curricular requirements in R4-19-502;

5. A proposed time schedule for implementation of the program and attaining national accreditation;

6. The total hours allotted for both didactic instruction and supervised clinical practicum in the program;

7. A program proposal that provides evidence of sufficient financial resources, clinical opportunities and available faculty and preceptors for the proposed enrollment and planned expansion;

8. A self-study that provides evidence of compliance with R4-19-502;

B. An entity that wishes to offer a CRNA program shall submit evidence of current accreditation by the Council on Accreditation of Nurse Anesthesia Education Programs or an equivalent organization.

C. The Board shall approve an advanced practice registered nursing program if approval is in the best interest of the public and the program meets the requirements of this Article. The Board may grant approval for a period of two years or less to an advanced practice nursing program where the program meets all the requirements of this Article except for accreditation by a national nursing accrediting agency, based on the program's presentation of evidence that it has applied for accreditation and meets accreditation standards.

D. An educational institution or entity that is denied approval of an advanced practice registered nursing program may request a hearing by filing a written request with the Board within 30 days of service of the Board's order denying its application for approval. Hearings shall be conducted in accordance with A.R.S. Title 41, Chapter 6, Article 10 and 4 A.A.C. 19, Article 6.

E. Approval of an advanced practice registered nursing program expires 12 months from the date of approval if a class of students is not admitted within that time.

R4-19-504 Notice of Deficiency; Unprofessional Program Conduct

(D). A disciplinary action, denial of approval, or notice of deficiency may be issued against an RNP or CNS nursing program for any of the following acts of unprofessional conduct:

8. Failure to comply with Board requirements within designated time-frame.

The conduct and circumstances described in the Findings of Fact constitute sufficient cause pursuant to A.R.S. § 32-1664(O) to revoke, suspend or take other disciplinary action against Applicant's program approval to conduct an advanced practice nursing program in the State of Arizona.

However, in lieu of a hearing, Applicant agrees to issuance of the following Order and waives all rights to a hearing, rehearing, appeal or judicial review relating to this matter. Applicant further waives any and all claims or causes of action, whether known or unknown, that

Applicant may have against the State of Arizona, the Board, its members, officers, employees and/or agents arising out of this matter.

Applicant admits to the Board's Findings of Fact and Conclusions of Law.

Applicant understands that the admissions in the Findings of Fact are conclusive evidence of a violation of the Nurse Practice Act and may be used for purposes of determining sanctions in any future disciplinary matter.

Applicant understands the right to consult legal counsel prior to entering into this Consent Agreement and such consultation has been either obtained or is waived.

Applicant understands that this Consent Agreement is effective upon its acceptance by the Board or its designee and by Applicant as evidenced by the respective signatures thereto. Applicant's signature obtained via facsimile shall have the same effect as an original signature. Once signed by Applicant, the Agreement cannot be withdrawn without the Board's approval or by stipulation between Applicant and the Board's designee. The effective date of this Order is the date the Consent Agreement is signed by Applicant and accepted by the Board or its designee.

*Shanna Akers*

Signature or Approved Applicant Representative
Shanna W. Akers, Liberty University

Shanna W. Akers, Dean, LU School of Nursing

Print the signer's name AND title



ARIZONA STATE BOARD OF NURSING
*Joey Ridenour RN MN FAAN*

Joey Ridenour, R.N., M.N., F.A.A.N.
Executive Director

Dated: 5/7/2021

JR/DH:ll

## ORDER

In view of the above the Findings of Fact, Conclusions of Law, and the consent of Applicant, the Board hereby issues the following Order:

   A. Applicant's consent to the terms and conditions of this Order and waiver of hearing is accepted.

   B. It is ordered that, upon meeting all approval requirements, acceptance by the Board of this agreement, and full and complete payment for the Civil Penalty received by the Board (see section C, below), the approval of Liberty Family Nurse Practitioner BSN-DNP, Psych Mental Health Nurse Practitioner Post-Masters, Certificate, Psych Mental Health Nurse Practitioner Post MS-DNP and Psych Mental Health Nurse, Practitioner Post-BSN DNP programs shall be granted, and a DECREE OF CENSURE be entered against Applicant's program approval.

   C. If not signed within 30 days and civil penalty paid within 60 days, deny approval.

   D. Applicant shall be assessed a Civil Penalty in the amount of $4,000.00.

    1) Applicant shall pay the Civil Penalty, in full, no later than 6/28/2021 **via the Board's Online Payment System[1].**

    2) If Applicant fails to timely pay the Civil Penalty, in the manner stated in paragraph C. (1), above, Applicant's nursing program application shall be DENIED, and the Applicant may not reapply for approval for a period of two (2) years.

---

[1] The Board's online payment system is available at https://azbngateway.az.gov/

*Liberty University, Decree of Censure -Civil Penalty*        7

Applicant waives any and all rights to a hearing, rehearing or judicial review of any suspension or revocation imposed pursuant to this paragraph.

D.    While this Order is in effect and/or Applicant's approval is subject to discipline, up to and including denial, Applicant is not eligible to renew any other expired approval previously held by Applicant without prior review and approval by the Board.

Board Date: <u>March 31, 2021</u>



ARIZONA STATE BOARD OF NURSING

Joey Ridenour, R.N., M.N., F.A.A.N.
Executive Director

Dated: <u>5/7/2021</u>

Acceptance Date: <u>5/7/2021</u>

JR/DH:ll

//
//
//
//
//
//
//
//
//
//

Transmitted this 28th, day of April, 2021 via Adobe Sign to:

Shanna W. Akers, Liberty University: sakers@liberty.edu

By:    <u>Lyn Ledbetter</u>
       Administrative Assistant

---------

Fully Executed copy sent this <u>21</u> day of <u>May</u>, 2021 via Adobe Sign to:

Shanna W. Akers, Liberty University: sakers@liberty.edu

Signed in the Board Office on <u>05/21/2021</u>.

By:    <u>Lyn Ledbetter (May 21, 2021 13:15 PDT)</u>
       Administrative Assistant

# EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
K. Sleeseman, Deputy
7/22/2022 5:39:35 PM
Filing ID 14599986

Person/Attorney Filing: Jeffrey Harris
Mailing Address: 8355 E Hartford Drive Suite 200
City, State, Zip Code: Scottsdale, AZ 85255
Phone Number: (480)483-9600
E-Mail Address: Jharris@tbl-law.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 031136, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MISTY PAGAN<br>Plaintiff(s),<br>v.<br>LIBERTY UNIVERSITY, INC. a Virginia<br>corporation<br>Defendant(s). | Case No.  CV2022-052306<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Jeffrey Harris /s/
Plaintiff/Attorney for Plaintiff

AZTurboCourt.gov Form Set #7027720

# EXHIBIT 3

Robert H. Feinberg (Bar #015059)
Joshua R. Woodard (Bar #015592)
Claudia E. Stedman (Bar #036387)
SNELL & WILMER, L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
Email: rfeinberg@swlaw.com
        jwoodard@swlaw.com
        cstedman@swlaw.com

*Attorneys for Defendant Liberty University, Inc.*

## IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| In re the Matter of: | Case No. CV2022-052306 |
| MISTY PAGAN, | |
| Plaintiff, | **NOTICE OF FILING NOTICE OF REMOVAL** |
| v. | |
| LIBERTY UNIVERSITY, INC. a Virginia corporation, | (Assigned to the Hon. Melissa Julian) |
| Defendants. | |

To the Clerk of the Court and Plaintiff Misty Pagan:

PLEASE TAKE NOTICE that on September 1st, 2022, a copy of the Notice of Removal, attached hereto as **Exhibit A**, was filed with the Clerk of the United States District Court for the District of Arizona.

DATED: September 1st, 2022.

SNELL & WILMER L.L.P.


By: */s/Claudia E. Stedman*
Robert H. Feinberg (Bar #015059)
Joshua R. Woodard (Bar #015592)
Claudia E. Stedman (Bar #036387)
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
*Attorneys for Defendants*

The foregoing was eFiled via TurboCourt
and e-mailed on September 1st, 2022 to:

Jeffrey Harris (Bar #031136)
**TITUS BRUECKNER & LEVINE PLC**
8355 E. Hartford Dr., Suite 200
Scottsdale, Arizona 85255
480-483-9600
jharris@tbl-law.com

*Attorney for Plaintiff Misty Pagan*


*/s/Natalie Ayala*